UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANA MARGARITA LEMUS,

Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

Defendant.

Case No. 16-cv-06163-RS

**ORDER GRANTING PLAINTIFF'S ALTERNATIVE MOTION TO REMAND AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# I. INTRODUCTION

Plaintiff Ana Margarita Lemus appeals the decision of the Commissioner of Social Security ("the Commissioner") to withdraw Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") pursuant to Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416, 423, 1382c. An Administrative Law Judge ("ALJ") determined that she was no longer disabled and therefore not eligible for continued benefits. For the reasons that follow, the decision of the ALJ is vacated, and the matter is remanded for further proceedings consistent with this opinion.

# II. BACKGROUND[1]

In 2005 the Commissioner determined Lemus was disabled because of her metastatic

---

[1] This synopsis is based on the certified administrative record ("AR").

breast carcinoma. In May 2013, based on evidence that the cancer had been in remission since before 2011, the Commissioner informed Lemus that her benefits would be terminated because her disability had ended. Lemus challenged this decision, and an ALJ reviewed her case in 2015. The ALJ found that the impairment caused by Lemus's cancer was reduced in severity, such that as of July 1, 2013, she was no longer disabled and thus not entitled to benefits.

Now, Lemus argues that a more recent impairment in her shoulders qualifies her for continuing SSI and DIB under a different Listing from the one originally qualifying her for benefits. The record indicates she also has problems with her knees and lower back. Lemus sought treatment for pain in both shoulders in 2014, and underwent surgery on the right shoulder on March 14, 2015, one month before the ALJ's decision. Lemus submitted evidence from Dr. Bonilla, her primary care physician, and from Dr. Khan, the surgeon who operated on her shoulder. Dr. Khan submitted a check box form given to him by Lemus's counsel, MRI data, and a physical therapy order.

In his decision, the ALJ gave very limited weight to Dr. Khan's submissions, which Lemus contends was an improper application of law, such that the ALJ did not base his decision on substantial evidence. The ALJ determined Lemus's shoulder pain would not last 12 months, and it was not severe enough to maintain the SSI and DIB from her initial impairment. Lemus requested the Appeals Council review her case later in 2015. In support of her request, she submitted treatment notes from Dr. Khan's orthopedic office ranging from November 2014 to July 2015. The Council denied the request for review in August 2016. On October 25, 2016, Lemus brought this suit, seeking reversal of the ALJ's decision and a finding that she is entitled to reinstatement of her benefits, or in the alternative, remand to the ALJ for another hearing to reexamine the evidence in support of her claim. Lemus argues that the ALJ's failure to give proper weight to a treating physician's opinion was legal error, and that the ALJ's decision was not supported by substantial evidence. The Commissioner filed a cross-motion for summary judgment, asking the court to affirm the ALJ's decision.

## III. STANDARD OF REVIEW

This court has the right to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The ALJ's decision shall not be overturned unless it was not supported by substantial evidence, or if it was made based on legal error. *Beltran v. Astrue*, 700 F.3d 386, 388 (9th Cir. 2012). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance — it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam). In determining whether substantial evidence supports a decision, the court must examine the administrative record as a whole, considering all the facts. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If the evidence supports more than one rational interpretation, the court must defer to the ALJ's decision. *Id*. at 1258. However, the court should set aside the decision if it is not supported by substantial evidence or if "the ALJ's findings are based on legal error." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

Functioning as an appellate court reviewing the Commissioner's decision, a district court applies the laws, regulations, and policy rulings as they were in effect at the time of the final decision. "When the Appeals Council declines review, 'the ALJ's decision becomes the final decision of the Commissioner.'" *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012), (quoting *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir.2011)). When a district court reviews the Commissioner's decision for substantial evidence, it shall consider all evidence in the record, including evidence added after the ALJ's decision, but accepted by the Appeals Council before the Council denied review. *Brewes*, 682 F.3d at 1159-60.

## IV. DISCUSSION

As is relevant here, a person is "disabled" for the purposes of receiving SSI and DIB if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant's disability has ended, the ALJ must follow an eight-step

process. The first step is only required for DIB, but the remaining seven steps apply to both SSI and DIB. The steps are summarized as follows: (1) if the claimant is engaging in substantial gainful activity, she is no longer disabled; (2) if she has an impairment meeting the requirements set forth in the regulation, she continues to be disabled; (3) if she does not have such an impairment, the ALJ will determine if there has been improvement from her initial qualifying impairment; (4) if her impairment has improved, the ALJ will determine whether it is such that the claimant may work; (5) if there has been no improvement, the disability will be found to continue, unless the ALJ determines an exception applies; (6) if there has been medical improvement, the ALJ will determine whether the impairment continues to be severe, based on whether the claimant's improvements enable her to do basic work activities; (7) if the impairment continues to be severe, the ALJ will assess the claimant's residual functional capacity ("RFC") to continue doing the work she has done in the past, and if her RFC is sufficient that she can do such work, she is no longer disabled; (8) if her RFC does not allow her to do her past work, the ALJ will determine if she can do other work, but if she cannot, she continues to be disabled. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5).

In this case, the ALJ went through all the proper steps. He found that as of July 2013, Lemus's medical impairments were "right shoulder pain with tendinopathy and partial rotator tear and impingement with recent corrective surgery on March 14, 2015, remote history of resolved metastatic cancer to the breast, and adjustment disorder with depressed mood." AR 30. The ALJ concluded, however, these impairments did not meet the requisite severity to prevent Lemus from working, particularly because he expected her shoulder to heal within a few months. AR 38. Despite these impairments, the ALJ found that Lemus's RFC was such that she could either continue her previous work as a housekeeper, housekeeping supervisor, or telemarketer, or find alternative work as a cashier or assembler. AR 40.

Lemus first argues the ALJ erred by not giving proper weight to Dr. Khan's evidence. The record, however, does not support this conclusion. Treating and examining physicians' opinions are generally given more weight than those of an expert who has not interacted with the patient.

20 C.F.R. § 404.1527(c). The ALJ takes into account the length of the physician-patient relationship, as well as the nature and extent of the treatment. *Id*. To balance the evidence properly, the ALJ gives more weight to a physician's opinion in correlation with the amount of evidence he or she provides to support the opinion. *Id*. Therefore if a physician provides no evidence to support his opinion, the ALJ does not have to give weight to that physician's opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012).

In this case, Dr. Khan initially offered little evidence to the ALJ. He submitted a form on which he checked a box indicating Lemus met the qualifications for Listing 1.02B, which requires impairment of both right and left upper extremities. AR 630; 20 C.F.R. Pt. 404, Subpt. P, App. 1 Listing of Impairments. As evidence of Lemus's impairment, he submitted the MRI data indicating Lemus's need for surgery on her right shoulder. AR 617-27. On the form, when asked whether Lemus had problems with her range of motion, he marked "yes" and wrote some abbreviations. AR 630. While Dr. Khan performed the surgery a month prior to the ALJ's decision, he did not submit any evidence indicating what he thought would be the result of that surgery. He gave no recovery timeline, nor did he show whether or not Lemus would continue to be disabled such that she would meet the Listing requirement after she recovered from the surgery. As her surgeon, this is information that he could have provided to the ALJ.

The ALJ may reject a treating physician's opinion if it is contradicted by "clear and convincing" evidence from another physician, and as long as the ALJ gives "specific and legitimate reasons" for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Dr. Sherman was the Commissioner's expert witness who reviewed Lemus's medical records. Dr. Sherman testified, based on the evidence in the record, that Lemus's right shoulder would heal in four months and that there was no evidence her left shoulder, knees, and back issues were related to anything but age. AR 37. The ALJ rejected Dr. Khan's opinion because it was directly contradicted by Dr. Sherman's more detailed testimony, which is a specific and legitimate reason for the rejection. Given the limited information before the ALJ, the ALJ did not commit clear error in finding Dr. Sherman's opinion more persuasive.

Because there was no legal error, the next question is whether the ALJ's decision was supported by substantial evidence. *Beltran*, 700 F.3d at 388. Lemus asserts that Social Security Ruling ("SSR") 16-3p should govern this court's evaluation of the ALJ's reasoning. SSR 16-3p is a policy ruling interpreting how the Commissioner assesses a claimant's symptoms when they are unsubstantiated by objective medical evidence. SSR 16-3p was published in 2016, and then clarified in 2017. SSR 16-3p explicitly states, "[w]hen a Federal court reviews our final decision in a claim . . . we expect the court to review the final decision using the **rules** that were in effect at the time we issued the decision under review" (emphasis in the original). The final decision was made by the ALJ, not the Appeals Council as Lemus contends, because the Appeals Council denied review. Therefore, because SSR 96-7p was in effect at the time the ALJ made his decision, SSR 96-7p governs this analysis.

The ALJ properly applied SSR 96-7p to Lemus's case. According to the ruling's instructions, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p (1996). Lemus contends she was disabled because of pain in her shoulders, lower back, and knees. AR 34-36. In regards to her shoulders, the ALJ determined that the surgery should have corrected the problem (because Dr. Khan originally provided no prognosis), which would not make her disability last the requisite 12 months. AR 37. Furthermore, the ALJ did not find her claims about her left shoulder, knees, and back credible based on his assessment of the record, because the Commissioner's expert testified that there should not have been anything wrong. AR 37.

Based on the additions to the record after the case was heard by the ALJ, however, there is now objective medical evidence supporting Lemus's claims. The additional evidence includes an MRI revealing that she had a torn meniscus in her left knee, lumbar degeneration, and possibly other problems. AR 670, 678. The supplemented records also shows that Lemus received a cortisone injection to her left knee, something which presumably would not be done without

medical necessity. AR 673-74. As for her left shoulder, there is evidence of an "impingement," "rotator cuff tendinopathy and tendinosis," necessitating her participation in physical therapy to treat the shoulder. AR 648, 654. The status of her right shoulder is somewhat unclear beyond the fact that it was "slowly recuperating." AR 675. Lemus's treatment notes also state she had a "right-sided scapular injection," possibly indicating continuing problems with her right shoulder. Furthermore, the most recent piece of evidence in the record is a work status report filled out by Dr. Khan in July 2015, which indicates that Lemus would be unable to work until at least October 5, 2015, the date of her next exam. The treatment notes shed light on the fact that Lemus may not be recovering from the surgery as the Commissioner's expert anticipated, and they provide objective medical evidence of her originally unsubstantiated claims about her knees and back.

Considering all the evidence in the record, there is a strong likelihood that Lemus continues to be disabled. As the health of Lemus's knees and back is uncertain, the jobs suggested to Lemus by the vocational expert—which all involve a considerable amount of standing—may need to be reevaluated. In light of the treatment notes added to the record after the ALJ's decision, that decision does not appear to be supported by substantial evidence. Because the administrative record stops in 2015, a factual determination of Lemus's current state is not possible at this time. Thus, there are outstanding questions that need to be addressed by the Commissioner.

## V. CONCLUSION

The ALJ's decision is vacated, and the matter is remanded for further evidentiary proceedings and a new hearing consistent with this opinion.

**IT IS SO ORDERED**.

Dated: January 24, 2018

RICHARD SEEBORG
United States District Judge

ORDER GRANTING ALTERNATIVE MOTION TO REMAND
CASE NO. 16-cv-06163-RS

7